**CASE NO. 23-1070**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRUIT

---

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellant*

v.

**JOHN GORDON**

*Defendant-Appellee*

---

On Appeal from the United States District Court
For the Eastern District of Michigan

---

**CORRECTED/AMENDED BRIEF OF
THE DEFENDANT-APPELLEE, JOHN GORDON**

---

NICOLE L. SMITH, P 62475
Attorney for Defendant-Appellee
467 Eureka Road, Suite 1
Wyandotte, Michigan 48192
(734) 692-3033
nlsmith@smithmihas.com

# TABLE OF CONTENTS

Table of Authorities    iii

Statement in Support of Oral Arguments    1

Issues Presented    2

Statement of the Case    3

    I.  John Gordon's Personal Background    3

    II. Procedural History    4

Summary of the Argument    10

Argument    12

    I.  The District Court correctly used its authority under Section
404 of the First Step Act to reduce Mr. Gordon's homicide sentence.    12

        A. Mr. Gordon is eligible for relief under the plain terms of the
First Step Act.    12

        B. The district court did not violate the mandate rule when
it resentenced Mr. Gordon.    13

    II. The District Court did not abuse its discretion in reducing Mr.
Gordon's life sentence.    17

        A. Standard of Review    18

        B. The district court correctly identified the applicable penalties,
Mr. Gordon's guidelines range, and changes in the law,
while applying the factors cited in 18 U.S.C. § 3553(a).    19

        C. The district Court did not abuse its discretion when it
sentenced Mr. Gordon to less than time served.    24

Conclusion    26

Certificate of Conformity and Service      27

Designation of Relevant District Court Documents      28

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases:</u>**

*Concepcion v. United States,* 597 U.S. 481 (2022)                    19, 22

*In re Gordon,* No. 17-1118, sip op. (6th Cir.)                    5

*Pepper v. United States,* 562 U.S. 476 (2011)                    22

*Solem v. Helm,* 463 U.S. 277 (1983)                    19

*United States v. Booker,* 543 U.S. 220 (2005)                    18

*United States v. Dotz,* 455 F.3d 644 (6th Cir. 2006)                    24

*United States v. Duso,* 42 F.3d 365 (6th Cir. 1994)                    14

*United States v. Flowers,* 963 F.3d 492 (6th Cir. 2020)                    18

*United States v. Gravatt,* 953 F.3d 258 (4th Cir. 2020)                    6

*United States v. Hebeka,* 89 F.3d 279 (6th Cir. 1996)                    14, 15

*United States v. Holden,* 557 F.3d 698 (6th Cir. 2009)                    24

*United States v. Hudson,* 967 F.3d 605 (7th Cir. 2020)                    6

*United States v. Jackson,* 515 F.Supp. 3d 709 (E.D. Mich. 2021)                    6

*United States v. Maxwell,* 991 F.3d 685 (6th Cir. 2021)                    6

*United States v. Moorad,* 38 F.3d 1419 (6th Cir. 1994)                    13, 14

*United States v. Nicols,* 897 F.3d 729 (6th Cir. 2018)                    24

**<u>Statutes:</u>**

18 U.S.C. § 2                                                    12

18 U.S.C. § 924(c)                                          passim

18 U.S.C. § 3553(a)                                        passim

18 U.S.C. § 3582                                               5

21 U.S.C. § 846                                               4

21 U.S.C. § 848(e)                                         4, 12

First Step Act of 2018, Pub. L. No. 115-391,
       § 404, 132 Stat. 5194 (2018)                  passim

**<u>Rules:</u>**

Fed. R. App. P. 28(1)                                       12

Fed. R. App. P. 32(a)(7)(B)                              27

Fed. R. Crim. P. 35(a)                                      24

## **STATEMENT IN SUPPORT OF ORAL ARGUMENTS**

For the reasons laid out in Mr. Brown's brief, the Defendant-Appellee, John

Gordon, also respectfully requests that the Court grant oral argument on this

appeal.  Counsel requests 20 minutes for argument.

## **ISSUES PRESENTED**

I.  Did the District Court have the authority under Section 404 of the First Step Act to reduce Mr. Gordon's concurrent life sentences for the covered and non-covered homicide offenses?

II. Did the District Court abuse its discretion when it weighed the statutory sentencing factors before reducing Mr. Gordon's life sentence to 25-years?

## STATEMENT OF THE CASE

I. **John Gordon's Personal Background**

John Gordon was born on December 6, 1971, in Detroit, Michigan from a brief relationship between his parents. Mr. Gordon resided primarily on the eastside of Detroit with his mother and stepfather. (PSR ¶ 80). Mr. Gordon's mother was not only addicted to drugs while he was growing up, but she also sold drugs out of the house. This lifestyle was all he knew. It is no surprise that when he turned 15-years old, Mr. Gordon was wooed and groomed by the head of the Best Friend's Gang. In that gang he found the structure and support he was missing at home. Although misguided one can understand how he fell into the grasp of the Best Friend's gang and was eventually used by the leaders of the gang to commit the crimes that lead to his lifetime sentence.

Since release, Mr. Gordon has thrived. Mr. Gordon has rewarded the faith the district court showed. He is a full-time employee of the Chrysler Corporation with health and retirement benefits. He is contributing to his community, encouraging teens to avoid the temptations and decisions that led to the destruction of not just his life but those of others. And he is taking care of his health. He is a beacon to other youth who are tempted to take the same path he took in drugs and gangs. He is paying it forward by showing them there is a different path.

II. **Procedural History**

In 1995, following a jury trial, Mr. Gordon, along with three of his co-defendant's, were convicted of three crimes: (1) conspiracy to distribute cocaine and cocaine bases in violation of 21 U.S.C. § 846; (2) intentionally killing in furtherance of conducting a continued criminal enterprise, in violation 21 U.S.C. § 848(e); and (3) using a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The jury did not determine the type or quantity of the drugs that were accountable to each defendant. The quantities were assessed by the probation department during its presentence investigation. The District Court sentenced Mr. Gordon to two concurrent life sentences (one for the drug conspiracy conviction and one for the intentional killing conviction). The Court further sentenced Mr. Gordon to a consecutive term of five years on one 924(c) firearm conviction. (Original Judgment, R. 1368, Page ID # 14183)

Following conviction and sentence, Mr. Gordon engaged in post-conviction litigation and appeals. In 2019 Mr. Gordon filed his Motion for Retroactive application of the Fair Sentencing Act in-light-of the First Step Act of 2018 (Motion, R. 2359, Page ID # 17356). In June 2019, the District Court denied Mr. Gordon's motion. (Order Denying Section 404 Motion, R. 2372, Page ID # 17570). Mr. Gordon appealed the Courts ruling. (Notice of Appeal, R. 2376, Page ID #

17634) While the appeal was pending, the original District Court Judge retired, and the case was reassigned to the Hon. David Lawson.

In May 2020, Mr. Gordon filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582. (Motion for Compassionate Release, R. 2396, Page ID # 17747). The new District Court Judge denied Mr. Gordon's Motion, ruling that the § 3553(a) factors did not support a sentence reduction. (Order Denying Compassionate Release Motion, R. 2425, Page ID # 18991).

On January 14, 2021, this Court ruled on Mr. Gordon's appeal on his 404 Motion. This Court vacated the District Court's order denying as to count 1, Mr. Gordon's Motion for a sentence reduction under the First Step Act and remanded for further proceedings. This Court, while vacating only as to count 1, advised previously "we granted Gordon authorization to challenge both of those sentences on the ground that he should not have been sentenced to life imprisonment for offenses that he committed before he turned eighteen years old." *In re Gordon,* No. 17-1118, slip op. at 2-3. (Order from Sixth Circuit, R. 2455).

On November 15, 2021, Mr. Gordon filed a Motion to Consider Reduction of Both Covered and Non-Covered Grouped Offenses Pursuant to Section 404 First step Act of 2018. (Motion, R. 2500, Page ID # 20125). On November 29, 2021, the Government filed their Response to Mr. Gordon's Motion. (Response to Motion, R. 2503, Page ID # 20143). Eight months later, on July 20, 2022, the

District Court issued its Opinion and Order on Mr. Gordon's motion along with

various other outstanding motions.  (Opinion and Order, R. 2541, Page ID #

20518).  In the District Court's Order and Opinion, the court stated:

> [T]he court of appeals also held that once it is found that a defendant
> was sentenced for a covered offense the First Step Act, permits (but
> does not require) plenary resentencing. *United States v. Maxwell,* 991
> F.3d 685, 691-92 (6th Cir. 2021).
>
> Nor does the so-called concurrent-sentence doctrine preclude the
> defendants' request for relief.  The Court has the discretion to reduce
> the total sentence when a covered offense is involved. *United States v.
> Jackson,* 515 F.Supp. 3d 709, 711-13 (E.D. Mich. 2021)(Lawson, J.)
> (citing *United States v. Hudson,* 967 F.3d 605 (7th Cir. 2020); *United
> States v. Gravatt,* 953 F.3d 258, 262 (4th Cir. 2020)). The court of
> appeal's acknowledgment that the First Step Act permits plenary
> resentencing also suggests that the Court may reduce an entire
> sentence that includes both covered and non-covered offenses.
> *Maxwell,* 991 F.3d at 691-92.

(Opinion and Order, R. 2541, Page ID # 20518)

The District Court thus ordered the United States Probation Department to

provide updated presentence reports with current information on Mr. Gordon and

his co-defendants' statuses.  The Government did not object to the Court's Order,

did not file a motion for reconsideration, and did not appeal the order to the Sixth

Circuit.  The District Court ordered Mr. Gordon to appear for resentencing.

Despite the District Court's July 20, 2022 Opinion and Order, the

government, in both its' prehearing memorandum and during arguments at the

hearing, again argued that the Court was limited to a sentence reduction on the

covered drug conspiracy, and therefore, could not reduce Mr. Gordon's sentence for the non-covered homicide or the 924(c) offense. (Prehearing Memorandum, R. 2568, Page ID # 20662-66) (Transcript of Resentencing Hearing, R. 2572, Page ID # 20848-49). The Government further argued that the § 3553(a) factor did not favor a reduction of sentence for Mr. Gordon. Despite the government's argument, the District Court reiterated that it had already ruled that it intended to resentence on all counts as ruled in its July 2022 order. (Transcript of Resentencing Hearing, R. 2572; Page ID # 20851).

Mr. Gordon argued that the District Court was correct in its ruling that the Court has the discretion to reduce a sentence that was imposed on both a covered and non-covered offense. Mr. Gordon went on to argue that the § 3553(a) factors favored a reduction of his sentence, and that the reduction was appropriate as a result of his rehabilitation and his health issues. (Transcript of Resentencing Hearing, R. 2572, Page ID # 20841).

Following allocution by both the government and Mr. Gordon, the District Court ruled that its earlier reasoning that both covered and non-covered offenses could be reduced at the resentencing under Section 404 applied. The District Court further ruled that it did not interpret the remand order to prohibit a plenary resentencing for Mr. Gordon. (Transcript of Resentencing, R. 2572, Page ID # 20867-69). The Court did agree with the government that the consecutive terms

under § 924(c) could not be reduced below the 5 years that Mr. Gordon was already sentenced to.

The District Court resentenced Mr. Gordon to two 20-year terms to run concurrent to each other.  The Court added the mandatory consecutive term of 5 years for the § 924(c) offense, giving Mr. Gordon a 25-year aggregate sentence. (Transcript of Resentencing, R. 2572, Page ID ## 20872-873).

Since Mr. Gordon had already served almost 28 years in prison, the sentence reduction to 25 years resulted in almost 3 years of overserved time. The Government immediately filed a Motion for Reconsideration with the Court requesting the sentence be modified to time served. (Motion for Reconsideration, R. 2573, Page ID # 20883).  Mr. Gordon, through counsel, responded that as a resentence the government had no grounds to challenge the final sentence. (Defendant's Response to Motion for Reconsideration, R. 2575, Page ID # 20888). The District Court disagreed with the government's arguments finding that it lacked authority to correct the mistake on reconsideration because it had conducted a plenary resentencing. (Order Denying Motion for Reconsideration, R. 2583, Page ID # 21027).

The Court entered Mr. Gordon's amended judgment in conformity with its rulings on the record and in its order. (Amended Judgment in a Criminal Case,

R.2584, Page ID # 21040). The Government filed its notice of appeal. (Notice of

Appeal, R. 2591, Page ID # 21129).

## SUMMARY OF THE ARGUMENTS

The district court was within its authority under Section 404 of the First Step Act to reduce Mr. Gordon's life sentence. Section 404 provides the district court with a mechanism to modify the sentence of those convicted of "covered offense(s)." It is not disputed that Mr. Gordon's drug conspiracy conviction is a covered offense. Like his co-defendants, Mr. Gordon was also convicted of two non-covered offenses – Intentional Killing, Aiding & Abetting, and § 924(c). Despite the Government's arguments, the non-covered convictions do not limit Mr. Gordon's eligibility for relief.

The two limitations on the district court's authority under the First Step Act do not apply here. Congress did not limit the authority of district courts to modify sentences imposed for both covered and non-covered offenses, and this Court should not add unintended exclusions onto the statute.

Finally, the district court did not abuse its considerable sentencing discretion in reducing Mr. Gordon's sentence. It analyzed the facts and circumstances surrounding Mr. Gordon's statutory sentencing factors and weighed those considerations properly. Despite the government's arguments, the modified sentence does not flow from an abuse of discretion.

The district court did not commit error or abuse its discretion in reducing and imposing Mr. Gordon's modified sentence.  The Court should therefore, affirm.

## **ARGUMENT**

**I.  The District Court correctly used its authority under Section 404 of the First Step Act to reduce Mr. Gordon's homicide sentence.**

Defendant-Appellee John Gordon hereby adopts by reference the legal arguments, standards of review, and case interpretation made on Issue I and its subpoints in the Brief of Defendant-Appellee Gregory Brown in this consolidated appeal, pursuant to FRAP 28(1).

### **A. Mr. Gordon is eligible for relief under the plain terms of the First Step Act.**

The district court's discretion to sentence Mr. Gordon in the fashion that it did is well founded in this Circuit's case law.  There is no dispute that the district court correctly resentenced Mr. Gordon's drug conspiracy offenses, as a covered offense under the Fair Sentencing Act.  Obviously, the parties disagree on whether the district court could resentence Mr. Gordon's conviction for an intentional killing in furtherance of a continuing criminal enterprise, a violation of the drug code 21 U.S.C. §848(e)(1)(A), and for aiding and abetting, a violation of 18 U.S.C. §2.

Nothing in the text of the Fair Sentencing Act limited the district court in its consideration of a non-covered offense.  In resentencing Mr. Gordon, the district court recognized Mr. Gordon's "covered offense" and appropriately exercised its discretion to resentence Mr. Gordon for the covered offense.  In its consideration of

the "non-covered offenses", the district court correctly found that excluding a non-covered offense from First Step Act consideration would have imposed a limitation on the Act's applicability that is not found in the actual text of the Act. There is no constraint on grouped and non-covered offenses, especially in Mr. Gordon's case where the "intentional killing" stemmed from a drug distribution conspiracy.

As this Court reviews the record, it should note that the district court initially made its findings that §404 relief was appropriate for Mr. Gordon and the co-defendants in this appeal. Once that determination was made, the district court proceeded to resentencing, in accordance with established case law cited in both the district court's opinions and Mr. Brown's brief. Thus, this Court should find that no legal error occurred and affirm the district court's application of the law.

### B. The district court did not violate the mandate rule when it resentenced Mr. Gordon.

The government attempts to extend the mandate rule into areas of resentencing in a fashion that is inappropriate and exceeds the boundaries of this Circuit's case law on the matter. As acknowledged earlier, the mandate rule requires lower courts to comply with the orders and instructions of the courts above. *See United States v. Moorad,* 38 F.3d 1419, 1421 (6th Cir. 1994). The test for whether a district court violated an appellate mandate includes (1) whether the appellate panel expressly or impliedly decided the issue on appeal, and (2) whether

the mandate was so narrow that it precluded the district court from considering the issue at stake. *Id.*

First, this Court must consider whether the mandate rule and the law of the case doctrine as a whole apply to sentencing arenas in the first place. This Circuit's holding in *United States v. Hebeka,* 89 F.3d 279, 284-85 (6th Cir. 1996) clearly states that it does not see a reason for holding trial courts accountable to the law of the case doctrine and mandate rule in re-sentencings. *Hebeka,* 89 F.3d at 284-85. The law of the case doctrine and the mandate rule have little applicability to sentencing for obvious reasons, "there appears to be no prohibition in the guidelines, or in the case law interpreting the guidelines, keeping a district court judge from revisiting the ***entire*** sentencing procedure unless restricted by the remand order." *United States v. Duso*, 42 F.3d 365, 368 (6th Cir. 1994)(emphasis added).

Even if a mandate applies to a sentencing issue, this Circuit has found that the mandate must be an explicit limitation on the district court's discretion at re-sentencing. *See United States v. Moorad*, 38 F.3d 1419, 1422 (6th Cir. 1994)("absent explicit limitations in the appellate court's mandate, an order vacating a sentence, an order vacating a sentence and remanding the case for resentencing 'directs the sentencing court to begin anew' so that 'fully de novo resentencing' is entirely appropriate."). *Id.* With its dismissiveness "regardless of

whether a district court has broad resentencing authority in general", the government rejects, without foundation, this Court's instructions in *Hebeka*. The key here is the need to have an ***express*** mandate that limits the district court's discretion when it comes to the district court's ability to conduct a plenary resentencing based on eligibility under the First Step Act.

There was wisdom in this Court's refusal to limit the district court with a far-reaching mandate. In doing so this Court gave the district court the much-needed discretion to go through the details of Mr. Gordon's case and subsequent incarceration. Anything less would have resulted in an injustice. Mr. Gordon faced a life in prison with no parole and little hope of relief from that sentence for crimes he committed when he was still a teenager. Mr. Gordon did not despair; he reformed and rehabilitated himself. He took over 1600 hours of programming and classes. He planned for a future, including a business plan for self-employment and that would in employ others in his community, in the unlikely event he was released.

The road to rehabilitation had minor bumps along the way. There was an infraction for being untidy because he left a milk jug in his sink and there was the time, he was written up for refusing a work/program assignment – because he was still physically attached a dialysis machine. There was also Mr. Gordon's health, one that included triple bypass surgery and a kidney transplant. Indeed, the district

court, which is not known for its leniency, considered the entire case including the history and characteristics of Mr. Gordon in concluding that an aggregate sentence of twenty-five years was appropriate.

The district court was also confronted with disparities in Mr. Gordon's sentence when compared with his co-defendants, specifically the leader of a gang conspiracy involving drug distribution and multiple murders. While Mr. Gordon remained in prison as a low-level co-conspirator, Stacey Culbert, the leader, was out of prison and off supervised release. In fact, Mr. Gordon and his three-co-defendants in this appeal were the **<u>only</u>** individuals from this conspiracy still incarcerated at the time of the re-sentencing.

What could be the most compelling facts that the district court faced were the change in law and the error of the original trial court in applying newly adopted guidelines to this case. If sentenced today, Mr. Gordon would have been sentenced to 20 years plus five years for the section 924(c) charge, a sentence that would have been in line with the time that the others in this gang conspiracy faced.

Since his release, Mr. Gordon has rewarded the faith the district court showed. He is a full-time employee of the Chrysler Corporation with health and retirement benefits. He is contributing to his community, encouraging teens to avoid the temptations and decisions that led to the destruction of not just his life

but those of others.  And he is taking care of his health.  He is a beacon to others like him that reformation and rehabilitation is both achievable and rewarding.

Therein lies the wisdom that this Court showed in limiting the scope of its mandate so the trial court could exercise its discretion to conduct full blown re-sentencing that could consider the aggregate sentence that Mr. Gordon faced in the light of who he was at the time the crime occurred and his present-day circumstances.  As such, the mandate rule did not apply to this resentencing.  Even if it did, the district court did not violate this court's mandate.

## II. The District Court did not abuse its discretion in reducing Mr. Gordon's life sentence.

Initially, the record is clear that the government conceded this point during arguments over Mr. Gordon's resentencing.  On December 1, 2022, the Court resentenced Mr. Gordon to 240 months in custody on Counts 1 and 10 of the Indictment, served concurrent to each other.  Mr. Gordon was also sentenced to a consecutive 60-month prison term on his conviction on Count 11.  (Transcript of Resentencing Hearing, R. 2572, Page ID # 20873).  During the hearing, the government asked and was granted a stay of the district court's order so it could consider further relief.

The district court granted a temporary stay, with a December 5, 2022 deadline to file a motion for a permanent stay of the district court order.  During this time, Mr. Gordon remained incarcerated, despite the multiple physical

conditions that threatened his life. The government decided not to pursue a stay of
the district court order. Instead, it filed a motion asking the district court to
reconsider the length of the resentence, and not the district court's actual exercise
of its authority to resentence Mr. Gordon. (Motion to Reconsider Reducing
Gordon's Sentence Below Time Served, R. 2573, Page ID # 20879). The motion
said nothing about an "extreme" downward departure. Rather, it only found fault
with the district court's decision to give a 25-year sentence which created credited
time, as opposed to a sentence of time served. As such, the government should be
limited to its argument that a 25-year sentence was abuse of discretion and that a
sentence of time served is appropriate. If this Court chooses to entertain the
government's argument that the district court abused its discretion in reducing Mr.
Gordon's sentence, it should affirm the district court's sentence.

### A.    Standard of Review

It has been almost two decades since *Booker* ruled that the sentencing
guidelines are advisory. The guidelines remain a starting point for trial courts to
consider as they formulate sentences. However, the trial courts also consider the
§3553(a) factors. *United States v. Flowers,* 963 F.3d 492, 498 (6th Cir. 2020). In
the end, the trial court is tasked with fashioning a sentence that is sufficient but no
greater than necessary to address the goals set forth in 18 U.S.C. §3553(a). *Id.*
Ultimately, district courts are afforded broad discretion under the First Step Act.

*Concepcion,* 597 U.S. at 501 (quoting *Solem v. Helm,* 463 U.S. 277, 290, n. 16 (1983)("it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence."). The review standard is abuse of discretion.

**B.    The district court correctly identified the applicable penalties, Mr. Gordon's guidelines range, and changes in the law, while applying the factors cited in 18 U.S.C. §3553(a).**

The record clearly indicates the district court followed correct procedure by stating Mr. Gordon's guidelines.  Likewise, the district court's downward variance from the guidelines is also correct and within the broad discretion that it has been granted to exercise in sentencings.

In critiquing the district court's reasons for Mr. Gordon's reduced sentence, the government errs by attempting to tease out each reason as stand-alone propositions for release.  18 U.S.C. §3553(a)(1) tasks the district court with evaluating a defendant's history and characteristics.  Mr. Gordon's health was part of the consideration.

At the time of Mr. Gordon's initial motion for compassionate release, severe kidney problems had forced him to undergo dialysis.  In the time between his motion and the resentencing, Mr. Gordon's condition had significantly worsened.  Dialysis was no longer a feasible long-term solution to Mr. Gordon's health issues.  Mr. Gordon underwent a kidney transplant. The BOP and probation questioned the

BOP's ability to assist Mr. Gordon's post-surgery rehabilitation and the administration of anti-rejection drugs.  The reality is that life after a kidney transplant is an arduous path that requires specialized care from health care professionals trained and experienced in transplant after care.  For the government to simply minimize Mr. Gordon's health care issues as some common variety "health care problems" that defendants who are sentenced to life in prison usually experience is a gross misrepresentation of the life-threatening condition that the district court considered at resentencing.

Again, in reality, the government's request in its motion for "reconsideration" shows that the government in real time appreciated and acknowledged the seriousness of Mr. Gordon's health issues.  Its arguments for reconsideration of the length of Mr. Gordon's sentence had nothing to do with the prior proclamations of the district court or Mr. Gordon's health or its conjecture regarding the original judge's intent in sentencing Mr. Gordon.

Instead, the government stated the abuse of discretion was in granting Mr. Gordon a 25-year aggregate sentence that essentially gave him three plus years of credit in the event of a supervised release violation.  The relief sought by the government was not a life sentence but rather a sentence of time served. Somehow in the course of a year or so, the government now claims that its own request is somehow unjust and an abuse of discretion.  The absurdity of the

government's change of course illustrates that indeed, the district court's sentence was well within its discretion.

The government doubles down in its brief by questioning the district court's review of the public's interest in keeping so called "cold blooded killers" confined. The record reflects that the district court was mindful of this factor as well. In doing so, the district court took note of the co-conspirators in this case. There is no contesting that the story of Stacey Culbert and his culpability for two murders as one of the leaders of the Best Friends gang was prominent in that consideration, especially in comparison to Mr. Gordon's youth at the time of the offense, his lesser role in the gang, and the grooming he underwent from elder gang members such as Culbert.

The district court also took into consideration arguments that under 18 U.S.C. §3553(a)(6) there was a gross disparity in Mr. Gordon's sentence with that of the other 40 co-defendants in the Best Friends case. He and the co-defendants in this appeal were the only ones who remained behind bars at the time of the resentencing. Culbert was not the only example of the disparity in sentencing in the Best Friends case, he was simply the greatest example of the disparity.

In all, there were 44 defendants in the Best Friends prosecution. Most cooperated, including those who were leaders in the gang conspiracy and who ordered the murders at issue in this appeal. Culbert pled to two murders but is

accountable for at least 13 murders, including that of a three-year-old child. Thomas Carr also admitted guilt to two murders. He served 15 years and is no longer supervised by the court. Charles Wilkes was involved in 12 murders, He served just under 12 years in prison. Lonnie O'Brien was culpable for multiple murders. He was incarcerated for just over 12 years.

The government points to cooperation for the disparity. However, the dirty little secret regarding cooperation is that it is a game of *quid pro quo*. Defendants have to give to get and those who have the most to give to the government, get the most from the government. It is no wonder that the leaders of the Best Friends conspiracy walked away from multiple homicides with so little time while teenagers like Mr. Gordon were expected to serve lifetimes for their crimes. The leaders had valuable information about the Best Friends conspiracy and likely, other criminal activity in Detroit and surrounding area. Mr. Gordon had no such knowledge and as a result, nothing of value that would give the government pause to pursue a life sentence.

The district court also reviewed the need for services and rehabilitation, especially in the light of post-sentencing rehabilitation that is prominent in Fair Sentencing Act cases. *Concepcion,* 597 U.S. at 492-93; *see also Pepper v. United States,* 562 U.S. 476, 487-99 (2011).

Calling these considerations "an abuse of discretion" is an exercise that ignores not only federal case law, but also simple principles of justice that are engrained in our legal system.  The district court made it clear in its ruling that it considered the crimes committed among the most egregious in the federal system. Nonetheless, it is also clear that the district court balanced that with Mr. Gordon's youth at the time of the offense, the severity of his physical ailments, his record in prison, and his rehabilitation which are often sited in sentencings and re-sentencings throughout this nation.   All of these considerations are well within the factors outlined in 18 U.S.C. §3553(a).

Ultimately, Mr. Gordon's sentence for the murders he was convicted of fit squarely with those sentenced to murder in 2020.  Statistics cited by the district court show that in 220, the median sentence for murder was 19 years; the mean sentence was 21 ¼ years.  Life in prison is not the only option, nor should it be given the requirements outlined in 18 U.S.C. §3553(a) and that the sentenced imposed be sufficient but no greater than necessary to affect a just sentence.

There was no abuse of discretion in Mr., Gordon's re-sentencing.  An experienced, well-respected jurist gave thoughtful consideration to the sentencing factors outlined by Congress.  In doing so, the district court found 25-years in prison to be sufficient or the crimes committed by Mr. Gordon.

**C.    The district court did not abuse its discretion when it sentenced Mr. Gordon to less than time served.**

The government's critique of the district court's refusal to entertain its self-styled motion for reconsideration fails to acknowledge two points. First, this Court has made it abundantly clear that there is no opportunity for the government to ask a trial court to reconsider a final sentence. *United States v. Dotz,* 455 F.3d 644, 648 (6th Cir. 2006). Nonetheless, in fairness to the government, the district court construed the motion as a Rule 35(a) motion that would allow the court to "correct a sentence that resulted from arithmetical, technical, or other clear error." Fed. R. Crim. P. 35(a).

The government failed to state any such error. This Court has taken on the issue of "banked" time and found that sentences that include banked time remain valid. *United States v. Nicols,* 897 F.3d 729, 734 (6th Cir. 2018)  As such, the government did not state a valid error under Rule 35(a).  Instead, it aired its grievances that the district court had gone down to a 25-year sentence, as opposed to one of time served.

"A district court abuses its discretion when it commits a legal error." *United States v. Holden,* 557 F.3d 698, 703 (6th Cir. 2009).  Rather than cite to legal error, the government opines that the district court made "a mistake" when it denied its motion to reconsider the judgment and re-resentence Mr. Gordon to time served. However, the ruling in the aforementioned *Nicols* case by this Court makes it clear

that the district court did not commit legal error and therefore, its sentence of time

served was not an abuse of discretion.

## CONCLUSION

The district court adhered to the rule of law in granting Mr. Gordon a resentencing pursuant to the First Step Act.  There was no error committed, nor was there a misinterpretation.  The district court adhered to the mandate of this Court, if indeed it was required to at resentencing.  As important, the district court exercised its specialized role to review the facts at sentencing and carefully apply the factors set forth in 18 U.S.C. §3553(a) to craft a sentence no greater than necessary to affect a just sentence.  It did so within  the boundaries of its discretion and in compliance with sentencing procedures and precedents.  For these reasons, as well as those set forth in the foregoing brief, this Court should affirm the district court's decisions as to Mr. Gordon.

Respectfully Submitted,

**SMITH MIHAS PLLC**

*/s/ Nicole L. Smith*
Nicole L. Smith, P62475
467 Eureka Road, Suite 1
Wyandotte, Michigan 48192
(734) 692-3033
nlsmith@smithmihas.com

*Attorney for John Gordon*

Date: February 7, 2024

## <u>CERTIFICATE OF CONFORMITY AND SERVICE</u>

1.  This brief complies with the 13,000 type-volume limitation of Fed. R. App.
    P. 32(a)(7)(B) as this brief contains 5969 words in proportionately spaced
    font, Times New Roman, including the parts of the brief exempted by Fed.
    R. App. P. 32(a)(7)(B)(iii).

2.  I certify that on February 7, 2024, a copy of Appellee, John Gordon's brief
    was electronically filed with the Clerk of the Court through the Court's
    CM/ECF Electronic Filing and Service System.  Notice of the filing will be
    sent through the CM/ECF system to all interested parties.


                                    */s/ Nicole L. Smith*
                                    Nicole L. Smith, P 62475
                                    Attorney for John Gordon

## DESIGNATION OF RELEVENT DISTRICT COURT DOCUMENTS

Mr. Gordon designates as relevant the following documents in the district court's electronic record, Eastern District of Michigan case number 92-81127:

| Record Number | Document Description | Page ID Range |
|---|---|---|
| 1368 | Judgment in a Criminal Case | 14183 – 14186 |
| 2359 | Motion Seeking Retroactive Application of the Fair Sentencing Act in Light of the First Step Act of 2018 | 17356 – 17389 |
| 2372 | Order Regarding Motion for Sentence Reduction Under the First Step Act of 2018 | 17570 |
| 2376 | Notice of Appeal | 17634 – 17635 |
| 2396 | Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582 for Immediate Release | 17747 – 17763 |
| 2425 | Order Denying Motion for Compassionate Release | 18991 – 19001 |
| 2455 | Order from Sixth Circuit | |
| 2500 | Motion to Consider Reduction of Both Covered and Non-Covered Grouped Offenses Pursuant to Section 404 First Step Act of 2018 | 20125 -20138 |
| 2503 | United States' Response to Defendant's Motion to Consider Reduction of Both Covered and Non-Covered Grouped Offenses Pursuant to Section 404 First Step Act of 2018 | 20143 – 20146 |
| 2541 | Opinion and Order Denying Motions to Vacate Sentence Under 28 U.S.C. § 2255, Granting in Part Motions by Defendants Dale, Gordon, and Polk to Reduce Sentences Under the Fair Sentencing Act, Granting in Part Defendant Brown's Motion for Reconsideration, and Denying Various Procedural Motions | 20518 – 20542 |
| 2568 | Sentence Modification Proceeding Memorandum | 20652 – 20679 20690 – 20698 |

| 2572 | Transcript Resenting Hearing | 20841 – 20878 |
|------|------------------------------|---------------|
| 2573 | Motion to Reconsider Reducing Gordon's Sentence Below Time Served | 20879 – 20886 |
| 2575 | Defendant's Response to Motion to Reconsider Reducing Gordon's Sentence Below Time Served | 20888 – 20899 |
| 2583 | Opinion and Order Denying Government's Motion for Reconsideration | 21027 – 21039 |
| 2584 | Amended Judgment in a Criminal Case | 21040 – 21044 |
| 2591 | Notice of Appeal | 21129 |